Slip Op. 22-14

UNITED STATES COURT OF INTERNATIONAL TRADE

TAIZHOU UNITED IMP. & EXP. CO. LTD.,

                     Plaintiff,

       and

GUANGZHOU JANGHO CURTAIN WALL SYSTEM
ENGINEERING CO., LTD., JANGHO GROUP CO.,
LTD., BEIJING JIANGHEYUAN HOLDING CO., LTD.,
BEIJING JANGHO CURTAIN WALL SYSTEM
ENGINEERING CO., LTD., JANGHO CURTAIN
WALL HONG KONG LTD., SHANGHAI JANGHO
CURTAIN WALL SYSTEM ENGINEERING CO.,
LTD.,

                 Consolidated Plaintiffs,

     v.

UNITED STATES,

                 Defendant,

       and

ALUMINUM EXTRUSIONS FAIR TRADE
COMMITTEE,

                 Defendant-Intervenor.

Before: Leo M. Gordon, Judge

Consol. Court No. 16-00009

**OPINION**

[Remand Results sustained.]

                           Dated: February 18, 2022

       Douglas J. Heffner and Richard P. Ferrin, Drinker Biddle & Reath LLP
of Washington, D.C., for Plaintiff Taizhou United Imp. & Exp. Co. Ltd.

J. Kevin Horgan, Alexandra H. Salzman, Gregory S. Menegaz, and John J. Kenkel, deKieffer & Horgan, PLLC of Washington, D.C., for Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System Engineering Co., Ltd.

Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C., for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades Jr., Assistant Director. Of counsel on the brief was Kirrin Hough, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, D.C.

Alan H. Price, Robert E. DeFrancesco, III, and Elizabeth S. Lee, Wiley Rein LLP of Washington, D.C., for Defendant-Intervenors Aluminum Extrusions Fair Trade Committee.

Gordon, Judge: This action involves the final results of the 2013 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order on aluminum extrusions from the People's Republic of China. See Aluminum Extrusions From the People's Republic of China, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) ("Final Results"), and the accompanying Issues and Decision Memorandum, C-570-968 (Dep't of Commerce Dec. 7, 2015), available at https://enforcement.trade.gov/frn/summary/prc/2015-31425-1.pdf ("Decision Memorandum"); see also Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) ("CVD Order"). Plaintiff Taizhou United Imp. & Exp. Co. Ltd., along with Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System

Engineering Co., Ltd. (collectively "Jangho"), challenged various aspects of Commerce's determinations in the Final Results.

The court presumes familiarity with the history of this action.  See Taizhou United Imp. & Exp. Co. v. United States, 44 CIT ___, 475 F. Supp. 3d 1305 (2020) ("Taizhou I"); see also Remand Results at 2–5 (explaining history of case); Shenyang Yuanda Aluminum Eng'g Co. v. United States, 41 CIT ___,  279 F. Supp. 3d 1209 (2017), aff'd, 918 F.3d 1355 (Fed. Cir. 2019) (affirming Commerce's determination that curtain wall units imported under contract for an entire curtain wall are subject to the CVD Order); Shenyang Yuanda Aluminum Industry Eng'g Co. v. United States, 38 CIT ___, 961 F. Supp. 2d 1291 (2014), aff'd, 776 F.3d 1351, 1358 (Fed. Cir. 2015) (affirming Commerce's determination that parts of curtain wall units are subject to the CVD Order); Antidumping Duty and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic of China (Dep't of Commerce Mar. 27, 2014) (final scope ruling on curtain wall units produced and imported as part of contract to supply curtain wall), available at https://enforcement.trade.gov/download/prc-ae/scope/38-curtain-wall-units-7apr14.pdf. In Taizhou I, the court sustained the Final Results as to almost all of the issues raised by Plaintiffs; however, the court remanded Commerce's determinations to countervail subsidized purchases of glass and aluminum extrusions for further explanation and reconsideration.  Id.

Before the court are Commerce's Final Results of Redetermination Pursuant to Court Remand, ECF No. 103 ("Remand Results"), filed pursuant to Taizhou I. On remand, Commerce "continue[d] to find that the provision of glass and aluminum

extrusions for less than adequate remuneration ("LTAR") are countervailable." See Remand Results at 2. Plaintiffs now challenge just Commerce's determination to continue to countervail subsidized glass purchases for LTAR. See Consolidated Plaintiffs' Comments on Remand Redetermination, ECF No. 109 ("Jangho Comments"); Plaintiff's Comments in Opp'n to Remand Results, ECF No. 110 (incorporating Jangho's Comments by reference); see also Defendant's Corrected Response to Comments on Remand Redetermination, ECF No. 117 ("Def.'s Resp."); Defendant-Intervenor's Response Comments on Remand Redetermination, ECF No. 114. The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)[1], and 28 U.S.C. § 1581(c) (2018). For the reasons set forth below, the court sustains the Remand Results.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2021).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2021).

## II. Discussion

A subsidy is countervailable if: (1) a government or public authority has provided a financial contribution; (2) a benefit is thereby conferred upon the recipient of the financial contribution; and (3) the subsidy is specific to a foreign enterprise or foreign industry, or a group of such enterprises or industries.  19 U.S.C. § 1677(5).  "A benefit shall normally be treated as conferred" to the recipient where goods or services are provided to the foreign manufacturer or producer of the subject merchandise for LTAR.  See 19 U.S.C. § 1677(5)(E)(iv); see also 19 C.F.R. § 351.511(a)(1).  Commerce "normally will consider a benefit to be conferred where a firm pays less for its inputs (e.g., money, a good, or a service) than it otherwise would pay in the absence of the

government program or receives more revenues than it otherwise would earn."   <u>See</u>

19 C.F.R. § 351.503(b)(1).

### A. Glass Inputs

### 1. Proceedings Below

In the underlying administrative review, Commerce found that "glass is an input

used in the manufacture of subject merchandise," and "accordingly, benefits arising from

the provision of glass for LTAR are [countervailable as those benefits are] not tied

to non-subject merchandise."   <u>See</u> <u>Decision Memorandum</u> at 97–98.   Commerce

disagreed with Plaintiffs that Commerce's decision to countervail glass violated language

in the <u>CVD Order</u> that excluded "non-aluminum extrusion components of subassemblies."

<u>Id.</u>  Rather, Commerce found that Plaintiffs' reliance on the exclusionary language was

misplaced:

> Regardless of the Jangho Companies' and the GOC's
> arguments with respect to that language of the scope, this
> does not affect our ability to countervail glass for LTAR.
> As discussed, curtain wall units are subject merchandise and
> the inputs at issue are used in the production of subject
> merchandise.  Thus, there is no basis to make a finding that
> the subsidy benefits for glass are tied to non-subject
> merchandise.   In light of the foregoing, we find it is thus
> appropriate for the Department to continue to countervail the
> glass for LTAR program.

<u>Id.</u>

In reviewing Commerce's treatment of glass, the court stated that it could not

understand how Commerce could reconcile its conclusion that "a curtain wall unit

is subject merchandise, inclusive of aluminum extrusions, glass, and all other

components" with the plain language of the <u>CVD Order</u>.  <u>See</u> <u>Taizhou I</u>, 44 CIT at ___,

475 F. Supp. 3d at 1310–11.  Commerce's unclear references to its "tying" practice and

how it applied its tying analysis in the underlying administrative review led the court

to remand this issue.  The court held that "the scope of the order covers aluminum

extrusions, not glass, and the <u>CVD Order</u> expressly excludes the nonaluminum extrusion

components of subassemblies like curtain wall units."  <u>See</u> <u>Taizhou I</u>, 44 CIT at ___,

475 F. Supp. 3d at 1311.  The court thus concluded that "[i]t is therefore arbitrary

to conclude the glass is subject merchandise," and directed that "Commerce must abide

by the clear scope language."  <u>Id.</u>

On remand, Plaintiffs again focused on the plain language of the <u>CVD Order</u>

excluding non-aluminum extrusion inputs, like glass, from the scope of the order,

regardless of whether the input is subsidized.  Plaintiffs maintained that subsidized

purchases of glass should be excluded from Commerce's benefits analysis and the

resulting calculus of the net subsidy rate.  Commerce disagreed, stating that its benefits

analysis, and thus the net subsidy rate, is to reflect any benefit received on any input

obtained for LTAR regardless of what the respondent company does with the subsidy,

unless such company demonstrates that the subsidy is not tied to the subject

merchandise.  <u>See</u> <u>Remand Results</u> at 7–11.  Commerce further explained that

the exclusionary language in the <u>CVD Order</u> is given effect when U.S. Customs and

Border Protection ("CBP") assesses respondents' duty liability "solely on the value

of the aluminum extrusion components included in the curtain wall unit, exclusive

of the value of the glass and any other non-aluminum extrusion[] components, when the respective values and necessary information are reported to CBP." Id. at 12.

Commerce recognized that the articulation of its rationale in the Decision Memorandum may have been "somewhat confusing." Id. at 7 (quoting, with emphasis, Decision Memorandum statement that "benefits arising from the provision of glass for LTAR are not tied to non-subject merchandise"). Commerce clarified that its "benefit analysis examines whether the respondent company has been provided a subsidy that confers a benefit to the company, not whether the benefit can be shown to flow directly to its production of subject merchandise." Id. at 8. Commerce noted that it is authorized to find a countervailable subsidy from the government provision of any good for LTAR that results in a benefit to the recipient company. Id. at 8–9 (quoting, with emphasis, the Preamble to Countervailing Duties; Final Rule, 63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1998) ("[W]hen we talk about input costs in the context of the definition of benefit, we are not referring to cost of production in a strict accounting sense. Nor are we referring exclusively to inputs into subject merchandise. Instead, we intend the term 'input' to extend broadly to any input into a firm that produces subject merchandise.")). Commerce explained that it has relied on this guidance in prior matters where it has found "that inputs obtained for LTAR could be countervailed, even when the inputs were not used in the production of the subject merchandise." See Remand Results at 9 (noting that governing statutes and regulations do not contain limiting language and "do not require that the goods provided for LTAR be used, exclusively

or otherwise, in the production of subject merchandise; they merely refer to those goods

that are provided for LTAR to the producer of the subject merchandise").

Commerce went on to note that its explanation in the <u>Decision Memorandum</u>

reflected its analysis of whether to apply the exception to not countervail subsidies

demonstrably tied to the production or sale of particular non-subject merchandise.  <u>Id.</u>

at 10.  It appears that Commerce initially focused on the fact that glass is an input used

in the manufacture of subject merchandise and is therefore countervailable because

the benefits derived from the purchase of glass for LTAR are intertwined with the subject

merchandise.  <u>See</u> <u>Decision Memorandum</u> at 97–98; <u>see also</u> Def.'s Resp. in Opp'n

to Pl.'s Mot. for J. on the Agency R. at 23, ECF No. 88 ("Commerce also determined that

each curtain wall unit contains glass, and, therefore, glass is an input used in

the manufacture of subject merchandise.  <u>Thus, the benefits arising from the provision</u>

<u>of glass for less than adequate remuneration are tied to subject merchandise and, thus,</u>

<u>are countervailable benefits</u> under 19 U.S.C. § 1677(5)(E)(iv)." (emphasis added));

<u>cf.</u> <u>Remand Results</u> at 7 ("The Court's concern over our decision to countervail glass

for LTAR appears to be based on its understanding that we determined that 'the benefits

derived from the purchase of glass for LTAR are tied to subject merchandise.'  <u>We made</u>

<u>no such determination</u>.  Rather, our decision to countervail the provision of glass for LTAR

is in accordance with law and with our practice, which recognizes that the provision

of goods for LTAR is not a subsidy that is tied to the production of particular merchandise

and, as such, <u>we find that it is neither tied to the production of subject merchandise nor</u>

<u>to the production of non-subject merchandise</u>.    Further, the manner in which

our determination of the respondents' respective net subsidy rates is applied, i.e., when

duties are assessed, gives effect to the scope of the Orders." (emphasis added)).

In the remand, Commerce re-examined and reaffirmed its decision to countervail

the provision of glass for LTAR, explaining that the "provision of goods for LTAR is not

a subsidy that is tied to the production of particular merchandise" and that the provision

of glass for LTAR to respondents "is neither tied to the production of subject merchandise

nor to the production of non-subject merchandise."   See Remand Results at 7.

Commerce further noted that its authority to countervail subsidies under 19 U.S.C.

§ 1677(5)(E)(iv) and 19 C.F.R. § 351.511(a)(1) is not limited to goods that are used in the

production of subject merchandise or are themselves subject merchandise.  See id. at 8

(explaining that relevant statutory and regulatory provisions enable Commerce

to countervail "goods and services" provided for LTAR, and that "[t]he use of the general

term 'good' without any modifier indicates that Commerce may consider a broad scope

of goods, and not just inputs into the production of subject merchandise or inputs that are

themselves subject merchandise").

Commerce explained that it generally countervails all or most goods provided

at LTAR, unless a respondent can show that the good was "tied" to non-subject

merchandise, meaning that the subsidized good was purchased with an intent for its

dedicated use in the production of non-subject merchandise.  See Remand Results

at 10–11 ("Under its longstanding 'tying' methodology, Commerce may find that a subsidy

is tied to a particular product, or other subset of the company's operations, where there

is clear and robust information showing the subsidy was in fact tied at the point

of bestowal; otherwise, the subsidy is "untied" and benefits the company's overall operations."); id. at 18 ("Absent substantive evidence of 'tying,' Commerce's practice has been to treat the subsidy as 'untied' and attribute the subsidy to the company's overall production pursuant to subsection 351.525(b)(3)."). Here, Commerce found that the record did not establish that the subsidized glass purchases were "tied" to non-subject merchandise, and consequently included the glass purchased for LTAR in its subsidy analysis. See id. at 11, 21 ("In the instant review, the record contained no evidence, at the time of the bestowal of the glass, i.e., a point prior to or concurrent with the provision of the glass, that established an intentional restriction of the subsidy to non-subject merchandise.").

## 2. Analysis

Plaintiffs argue that Commerce based its determination on a finding that glass was an input for subject merchandise and not whether the benefit was tied to non-subject merchandise. See Jangho Comments at 6 ("The Department did not base its determination on a finding that the benefits were not tied to non-subject merchandise, i.e., glass. The Department based its determination on a finding that glass was an input for subject merchandise."). Plaintiffs further maintain that the record demonstrates that the subsidized glass was "tied to non-subject merchandise." Id. at 7. Plaintiffs therefore conclude that "the facts of this case and Court's [decision in Taizhou I] require the Department to treat glass subsidies as tied to non-subject merchandise." See id. at 9. The court does not agree.

Plaintiffs' initial argument consists largely of conclusory statements.  See id. at 7 ("There is also no reasonable basis in the record for concluding that the subsidies bestowed by the provision of glass at LTAR are not tied to non-subject merchandise. The Department now apparently agrees that glass is not an input for aluminum extrusions.  Thus, LTAR glass purchases are not tied to the production of aluminum extrusions.").  The consequence is that Plaintiffs have failed to engage with Commerce's clarification of its analysis and further explanation set forth in the Remand Results. Commerce explained that the relevant regulatory and statutory provisions—19 U.S.C. §§ 1677(5) & (5A), as well as 19 C.F.R. §§ 351.503 & 351.511—allow Commerce to countervail goods provided to respondents at LTAR, and that these provisions "do not require that the goods provided for LTAR be used, exclusively or otherwise, in the production of subject merchandise."  Remand Results at 9.  Commerce noted that limiting its authority to countervail subsidies to only direct inputs of subject merchandise, as urged by Plaintiffs, "would create a loophole that would undermine the intent of the countervailing duty law by preventing Commerce from addressing the injury resulting from the provision of subsidies by foreign governments via goods that benefit the general operation of a producer."  Id. at 10.  Commerce further explained that it has consistently countervailed the provision for LTAR of goods, concluding that "inputs obtained for LTAR could be countervailed, even when the inputs were not used in the production of the subject merchandise."  Id. at 9 (citing Circular Welded Austenitic Stainless Pressure Pipe from the People's Republic of China, 74 Fed. Reg. 4,936 (Dep't of Commerce Jan. 28,

2009) (final affirm. CVD determ.), and accompanying Issues and Decision Memorandum at 18).

Additionally, Plaintiffs' argument that there is no reasonable basis in the record to conclude that the subsidized glass purchases are <u>not</u> tied to non-subject merchandise flips the burden of proof.  It is Plaintiffs' obligation to put information on the record that would provide a basis for Commerce to reach Plaintiffs' desired conclusion, namely that the subsidized glass purchases were dedicated to use in the production of "non-subject merchandise" leading Commerce to exclude those subsidies from its benefits analysis. <u>See</u> <u>Tianjin Wanhua Co. v. United States</u>, 40 CIT ___, ___, 179 F. Supp. 3d 1062, 1071 (2016) (noting that plaintiff must demonstrate that its preferred evidentiary finding is "the one and only reasonable" outcome on the administrative record, "not simply that [its preferred finding] may have constituted another possible reasonable choice").

As noted above, Plaintiffs point to nothing in the record demonstrating that their subsidized glass purchases were tied to non-subject merchandise.  Plaintiffs do not identify any non-subject merchandise to which the glass may have been "tied."  <u>See</u> Jangho Comments at 5 (arguing that benefit of "LTAR glass purchases" was "tied to non-subject merchandise, <u>i.e.</u>, glass").   Commerce found that Jangho's purchases of glass for LTAR were not designated for a certain subset of its production (<u>i.e.</u>, non-subject merchandise) when it purchased the glass.  <u>See</u> <u>Remand Results</u> at 22 ("Jangho also argues that its subsidies based on purchases of glass for LTAR were directly tied to sales of glass by Jangho.  However, as Jangho states, it sold curtain wall units, which are subject to the <u>CVD Order</u> on aluminum extrusions, and which included

glass as a component; Jangho did not sell glass itself.  Even so, we find no merit in Jangho's attempt to claim its glass for LTAR subsidies were tied to particular sales. Commerce makes determinations regarding the tying of subsidies based on record evidence showing the express intent for the use of the subsidy in a specified subset of a company's production, and the record of this proceeding includes no evidence establishing that Jangho's purchases of glass for LTAR were designated for a certain subset of its production when it purchased the glass.").  After assessing the record as a whole, Commerce determined that Plaintiffs failed to establish tying of the subsidy to non-subject merchandise, and therefore reaffirmed its determination to countervail respondents' purchases of glass for LTAR.  See Remand Results at 11.  Given this, the court concludes that Commerce's analysis and determination are reasonable.

Next, the court turns to Plaintiffs' contention that the Remand Results do not comply with Taizhou I, which directed Commerce to "give effect to the Order's language excluding 'non-aluminum extrusion components of subassemblies' from the scope of the order."  See Jangho Comments at 3; see also id. at 9 (arguing that "the facts of this case and Court's original judgment require the Department to treat glass subsidies as tied to non-subject merchandise").  Plaintiffs' arguments ignore the fact that the standard for the court's review is whether Commerce's decision-making is reasonable given the circumstances provided by the record as a whole, not whether the agency "complied with the court's order."  See 19 U.S.C. § 1516a(b)(1)(B)(i).  Commerce's initial explanation concluded that "a curtain wall unit is subject merchandise, inclusive of aluminum extrusions, glass, and all other components."  See Decision Memorandum at 100.

Based on that, Commerce determined that glass is a subsidized input included in a curtain wall unit that is subject merchandise under the <u>CVD Order</u>.  <u>Id.</u> at 98.  As stated previously, the court could not understand how Commerce's limited analysis and explanation in the <u>Decision Memorandum</u>, and as defended in Defendant's Response in Opposition to Plaintiff's Motion for Judgment on the Agency Record, ECF No. 88, did not contravene the plain language of the <u>CVD Order</u>.  <u>See</u> <u>supra</u> at pp. 6–9; <u>Taizhou I</u>, 44 CIT at ___, 475 F. Supp. 3d at 1311.  Accordingly, the court directed Commerce to "give effect to the <u>CVD Order</u>'s language excluding non-aluminum extrusion components of subassemblies from the scope of the order."  <u>Id.</u>

Although the court "remand[ed] this issue for Commerce to correct its analysis of the non-aluminum extrusion components of the curtain wall units," <u>see id.</u>, Plaintiffs' challenge to the <u>Remand Results</u> focuses solely on a narrow reading of the language in the court's remand order rather than the substance of the <u>Remand Results</u>.  Plaintiffs contend that Commerce's "remand results clearly do not comply" with the court's remand order and the further explanation "does not give effect to clear scope of language of the <u>CVD Order</u>."  <u>See</u> Jangho Comments at 3.  On remand, however, Commerce provided a more thorough explanation as to how and why its decision to countervail subsidized glass was in accordance with the statutory scheme and did not violate the language of the <u>CVD Order</u>.  <u>See</u> <u>Remand Results</u> at 7–12 ("even though Commerce's subsidy analysis includes benefits received through the provision of glass for LTAR, the calculation by U.S. Customs and Border Protection (CBP) of the respondents' duty liability is based solely on the entered value of the aluminum

extrusions subject to the <u>Orders</u>.  Therefore, the liability is calculated based solely on the value of the aluminum extrusion components included in the curtain wall unit, exclusive of the value of the glass and any other non-aluminum extrusion[] components, when the respective values and necessary information are reported to CBP.").

Alternatively, Plaintiffs argue that even if the court reaches the merits of Commerce's remand redetermination, the court should reject the agency or counsel's attempt to substitute a <u>post hoc</u> rationalization of its determination for its actual determination.  <u>See</u> Jangho Comments at 4.  "The courts may not accept counsel's <u>post hoc</u> rationalizations for agency action … it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."  <u>See</u> <u>SEC v. Chenery</u>, 332 U.S. 194, 196 (1947).  There is a difference between a <u>post hoc</u> rationalization and clarification of the reasoning underlying Commerce's decision-making. Here, Commerce, not its U.S. Department of Justice counsel, clarified and further explained on remand the rationale underlying its original (and continued) determination without resorting to novel arguments or legal interpretations.  Therefore, the court does not agree that the <u>Remand Results</u> reflect an impermissible <u>post hoc</u> rationalization of Commerce's initial determinations.

Plaintiffs also contend that the subsidy for glass is "obviously tied to non-subject merchandise" but offer no support for this "obvious" contention.  <u>See</u> Jangho Comments at 7.  Plaintiffs' comments suggest that Commerce should examine the use and effect of a subsidy to determine whether the subsidy is tied to subject merchandise.  <u>See</u> <u>id.</u> at 8 (noting that "the record shows that the purpose of the subsidies was to promote

the Chinese glass industry" and contending that "[a]ny benefit to glass purchasers was incidental to the purpose of the subsidies."). Commerce refused to conduct such an examination, explaining that "Commerce has a well-established practice of not considering the use and effect of subsidies." Remand Results at 9, 11 (citing Certain Steel Nails from the Sultanate of Oman, 80 Fed. Reg. 28,958 (Dep't of Commerce May 20, 2015) (final negative CVD determ.), and accompanying Issues & Decision Memorandum at 15). Plaintiffs offer nothing to demonstrate that Commerce's practice is unreasonable. See generally Jangho Comments.

Commerce likewise rejected Jangho's argument that "the provision of glass for LTAR subsidies are, 'by their very nature,' tied to glass at the point of bestowal." Remand Results at 21. As Commerce explained, "to the extent Jangho is arguing that the subsidy is tied to non-subject merchandise based simply on the input for which the subsidy is provided (i.e., glass), Jangho misunderstands Commerce's regulations and practice regarding the tying of subsidies. Commerce makes determinations regarding the tying of subsidies based on record evidence showing the express intent for the use of the subsidy in a specified subset of a company's production, not based on what Jangho refers to as the 'very nature' of the subsidy." See id. at 21 (internal citations omitted). Commerce found that "there is no information on the record, such as an executed contract or an agreement with express language, establishing that Jangho's purchases of glass for LTAR were designated for a certain subset of its production when it purchased the glass." Id. Accordingly, the court sustains as reasonable both Commerce's finding that the glass subsidies at issue were not "tied" to non-subject merchandise, as well as

Consol. Court No. 16-00009                                                      Page 18

Commerce's determination to continue to account for glass subsidies in the net subsidy rate.

## B. Aluminum Extrusions Inputs

Plaintiffs' initially challenged Commerce's determination to countervail subsidies to aluminum extrusion inputs to the subject merchandise. This issue was also remanded to Commerce. See Taizhou I, 44 CIT at ___, 475 F. Supp. 3d at 1311. On remand, Commerce continued to find that the provision of aluminum extrusions inputs for LTAR constituted countervailable subsidies to the production of subject merchandise. See Remand Results at 12–15, 24. Plaintiffs did not submit comments on the Remand Results with respect to this issue. Since Plaintiffs no longer challenge this issue, the court sustains Commerce's finding.

## III. Conclusion

Given the circumstances presented, including the long history of the application of the aluminum extrusion orders to curtain walls and curtain wall units, the court concludes that Commerce's analysis and determination are reasonable. Accordingly, the court sustains Commerce's Remand Results. Judgment will enter accordingly.

                                                        _____/s/ Leo M. Gordon_____
                                                        Judge Leo M. Gordon

Dated: February 18, 2022
          New York, New York